A. L. "Art" McCLELLAN, Appellant (Plaintiff below),

v.

CITY OF CASPER, Appellee (Defendant below).

No. 3724.

Supreme Court of Wyoming.

June 9, 1969.

Raymond B. Whitaker, Charles S. Aspinwall, Casper, for appellant.

Jack D. Emery, City Atty., Casper, for appellee.

Before GRAY, C. J., and McINTYRE, PARKER, and McEWAN, JJ.

Mr. Justice McEWAN delivered the opinion of the court.

On September 1, 1958, plaintiff entered into a five-year written agreement with the defendant-City to pick up rubbish and garbage within the city limits of Casper. The agreement provided, inter alia:

"4.  COLLECTIONS:

"Rubbish and garbage shall be collected by the Contractor as required by the provisions of the aforesaid Ordinance, as amended, and of this contract, from all places and premises within the corporate limits of the City as they now exist or as they may be altered during the term of this agreement."

\*     \*     \*     \*     \*     \*

"16.  CONTRACT PRICE:

"The City agrees to pay, and the Contractor agrees to accept in full payment for the work herein required to be performed by said Contract, the sum of Seventy-two and one-half percentage (72.5%) of the total sanitation fees and charges in each calendar month during the term of the Contract by the City from all persons, firms or corporations,

whether residential or business service in the City of Casper."

\*   \*   \*   \*   \*   \*

"18. EXTRA WORK FOR THE CITY:

"The Contractor shall do such extra work for the City in connection with the work herein contracted to be done as the City Manager shall direct, and the City shall pay the Contractor the cost of such work, plus 10% of such cost. No allowance for extra work of any kind shall be made unless the Contractor shall have been furnished with a work order authorizing such work, signd by the City Manager."

Prior to August 3, 1959, plaintiff picked up the trash in the business area during the morning hours. On that date the city manager requested that plaintiff pick up the trash in the business district at night. Some of the business firms placed their trash in the alleys at the end of the business day, and by the time plaintiff picked up the trash the following morning it was often scattered in the alleys. It was thought that the nighttime pickup might help to alleviate the scattered-trash problem.

Plaintiff contends that this nightly pickup was an additional pickup, while defendant contends that the nightly pickup was in lieu of the daytime pickup.

The agreement is silent as to the hours of pickup, and we cannot tell if any of the municipal ordinances have provisions as to hours since they are not part of the record.

Plaintiff contends that because of this additional pickup he was required to hire additional men and thus incurred more expense. Plaintiff alleges that he performed this extra work from August 3, 1959, to June 13, 1960, and on September 20, 1963, he submitted a claim for $7,664.76. The claim was denied by the City on October 11, 1963, and on June 19, 1967, plaintiff filed his complaint.

The matter was tried before the court without a jury on May 29, 1968, and on May 31, 1969, the trial court entered judgment for defendant. Plaintiff appeals.

Plaintiff contends on appeal that (1) The City via its city manager, entered into an implied oral contract for a nightly pickup of rubbish; (2) The city manager does have the authority to enter into agreements which are for the good of the City; (3) In the alternative, should the court find that the manager acted without express authority, the plaintiff below should still be allowed recovery under the doctrine of apparent authority; and (4) The court should find for the plaintiff below under the doctrine on quantum meruit to prevent the defendant below from being unjustly enriched.

█ It is not clear whether plaintiff is proceeding on quantum meruit or on the agreement. In his complaint, he alleges that, at the request of the city manager, plaintiff agreed to furnish additional services over and above the requirements of the written agreement and that he is entitled to reasonable compensation for furnishing the additional services. The report of the pretrial conference indicates that plaintiff's action was on quantum meruit. However, plaintiff's claim filed with the City is in the same amount as alleged in the complaint, which claim lists charges for a truck and one man, together with "10% Additional as stated in contract." While plaintiff is entitled to payment for extra work not contemplated in the agreement, he has the burden of showing by a preponderance of the evidence that the services performed were extra, and the amount due for such services, whether his suit is based on the agreement or on quantum meruit.

Plaintiff testified that Joe Miller did most of the work with regard to the nighttime pickup, that Joe Miller was employed prior to the start of the nighttime pickup, and that plaintiff had to hire an extra man to replace Joe Miller on the daytime shift. However, on cross-examination, plaintiff was unable to name the man who was hired to replace Joe Miller on the daytime

shift, and he was unable to produce any payroll records to show that an additional man had been hired. Mrs. Dee Robertson was plaintiff's bookkeeper and the only person employed in the office of plaintiff during the period in question. When she was asked if plaintiff's crew of men was increased as a result of this evening pick-up, she replied, "I don't know if he hired anyone or not, not to my knowledge."

■ We are convinced that plaintiff failed in his burden to show that he performed "extra work for the City" or that he incurred additional costs in so doing. The trial court was justified in its finding of such failure and in entering judgment for the defendant-City.

Plaintiff having failed in proving these essential elements, he cannot recover, and we, therefore, need not discuss his other contentions relating to the authority of the city manager.

Affirmed.